**FILED**
**U.S. District Court**
**District of Kansas**
06/18/2026
**Clerk, U.S. District Court**
**By: SND Deputy Clerk**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**LARRY E. GATLIN, III,**

**Petitioner,**

v.

**CASE NO. 26-3142-JWL**

**DANIEL SOPTIC,**

**Respondent.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

This is a pro se petition for writ of habeas corpus filed  pursuant to 28 U.S.C. § 2241 by Petitioner and state pretrial detainee Larry E. Gatlin, III, who is currently incarcerated at the Wyandotte County Detention Center in Kansas City, Kansas. (Doc. 1.) The Court screened the petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts[1] ("the Habeas Rules") and concluded that the petition was subject to dismissal in its entirety. Thus, on June 1, 2026, the Court issued a memorandum and order ("M&O") identifying the problems with the petition, which will be discussed in greater detail later in this order. (Doc. 5.) Rather than immediately dismiss this case, the Court granted Petitioner time to file an amended petition. *Id.* at 5-6.

This matter comes now before the Court on Petitioner's amended petition, which was filed on June 11, 2026. (Doc. 11.) The Court has carefully reviewed the amended petition as required by Habeas Rule 4 and concludes that, even when the petition is liberally construed, it is subject to dismissal in its entirety. Therefore, for the reasons set forth below, Petitioner will be required to

---

[1] Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts authorizes district courts to apply the Rules to habeas petitions not brought under § 2254, such as those brought under § 2241. *See* Rule 1(b), 28 U.S.C. foll. § 2254.

1

show good cause, in writing, why this action should not be dismissed without prejudice.

## Rule 4 Screening

Rule 4 of the Habeas Rules requires the Court to review a habeas petition upon filing and to dismiss it "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." 28 U.S.C.A. foll. § 2254. Because Petitioner is proceeding pro se, the Court liberally construes the petition, but it may not act as Petitioner's advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). "[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). It "'may not rewrite a petition to include claims that were never presented.'" *Childers v. Crow*, 1 F.4th 792, 798 (10th Cir. 2021) (citation omitted).

## The M&O (Doc. 5)

The M&O explained to Petitioner that the petition failed to comply with Rule 2(c) of the Habeas Rules, leaving the Court unable to determine the precise nature of Petitioner's claims. (Doc. 5, p. 4.) The M&O further noted that some statements in the petition appeared to relate to claims that are not grounds for relief under 28 U.S.C. § 2241 and that some of the relief requested in the petition is not available under § 2241. *Id.* at 4-5. Specifically, the M&O explained:

> To obtain federal habeas corpus relief, a state prisoner must demonstrate that he or she "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 commonly "'[is] used to attack the execution of a sentence . . . .'" *Sandusky v. Goetz*, 944 F.3d 1240, 1246 (10th Cir. 2019). It may also be used to seek "to compel the State to bring [a pretrial detainee] to trial." *See Smith v. Crow*, 2022 WL 12165390, at *2 (10th Cir. Oct. 21, 2022) (order denying certificate of appealability) (quoting *Dolack v. Allenbrand*, 548 F.2d 891, 893-94 (10th Cir. 1977),which was discussing *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484 (1973)).

> The petition in this matter is difficult to understand. Petitioner has used the

required, court-approved form for filing a petition under 28 U.S.C. § 2241, but it does not seem that he seeks to compel the state to bring him to trial or that he intends to attack the execution of a sentence imposed by a state court.

. . .

. . . [I]t appears that at least some of the claims Petitioner may intend to assert are not properly brought under 28 U.S.C. § 2241 and   at least some of the relief Petitioner seeks is not available under 28 U.S.C. § 2241. As noted above, § 2241 petitions may be used to attack the execution of a sentence or to compel the State to bring a pretrial detainee to trial. *See Sandusky*, 944 F.3d at 1246; *Smith*, 2022 WL 12165390 at *2. To obtain relief under § 2241, Petitioner must show that he is in custody in violation of a federal law, federal treaty, or the federal Constitution.   Claims other than this generally may not be pursued under 28 U.S.C. § 2241. Similarly, Petitioner seeks money damages, but money damages are not available in an action brought under § 2241; the relief available in a § 2241 action is the prisoner's immediate or speedier release. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).

(Doc. 5, p. 2, 4-5.)

### The Amended Petition (Doc. 11)

To Petitioner's credit, the amended petition is much clearer than the initial petition and it complies with Habeas Rule 2(c), meaning that the Court is now able to determine the nature of Petitioner's asserted grounds for relief. Petitioner has also omitted from his amended petition any request for monetary relief. The Court appreciates Petitioner's compliance with these portions of the M&O.

In the portion of the amended petition for identifying the decision or action being challenged, Petitioner states that he seeks to compel the state to bring him to trial, but he also asserts:  "I compel my detention." *Id.* at 2. Petitioner further asserts that he is a member of the U.S. State Department's "talent network" and that he maintains a trade secret, citing 28 U.S.C. § 1604, a provision of the Foreign Sovereign Immunities Act of 1976 ("FSIA"). *Id.*

In Ground One, Petitioner claims that his rights under the Eighth and Fourteenth

3

Amendments to the United States Constitution were violated when he was tortured and subjected to aggravated assault with chemicals and sexual harassment at the hands of "deputies," leading to "vision loss." (Doc. 11, p. 6.) As supporting facts for Ground One, Petitioner alleges that on April 15 and May 9, 2026, "SN Avenado [*sic*]" and Jonathan Cortez locked him in a shower, forced him to become naked, and sexually harassed him. *Id.* Petitioner asserts that "acidic sulfa" was sprayed in Petitioner's eyes while "the captain" laughed and commented. *Id.* Petitioner is allergic to sulfa and sulfates and being sprayed caused extreme pain, extreme inflammation, and irreparable vision loss. *Id.* Petitioner asked the deputies to stop spraying "because it burned," but they refused; they also refused to give him a towel or clothing. *Id.*

In Ground Two of the amended petition, Petitioner claims that his rights under the Fourteenth Amendment were violated when he was subjected to punishment as a pretrial detainee. *Id.* He also argues that his due process rights were violated and that unidentified individuals failed to intervene and failed to investigate sexual harassment of Petitioner. *Id.* As supporting facts for Ground Two, Petitioner states that he has been on 23-hour lockdown for 5 months, his commissary was suspended for 33 days, and his April 18, 2026 request that Deputy Cortez be kept away from him was rejected. *Id.* When Petitioner reported harassment on May 22, 2026, the report was sent to his attorney, as well as the prosecuting attorney and judge involved in his state criminal case, but none of those individuals have spoken with Petitioner about it. *Id.* Petitioner characterizes this as malicious process and a due process violation. *Id.*

In Ground Three, Petitioner asserts that his rights under the Fifth and Eighth Amendments were violated when he was subjected to excessive force during intake that dislocated his shoulder. *Id.* As supporting facts for Ground Three, he states that on February 10th, 2026, after an arrest in which he was attacked and choked, he was taken to jail. *Id.* At the time, Petitioner was suffering a

concussion as a result of a car accident. *Id.* During intake, Deputy Johnson threw him to the ground in the shower, kneeled on his neck, and dislocated his right shoulder. *Id.* Petitioner further asserts that Deputy Johnson maliciously twisted Petitioner's wrist when handcuffing him, despite Petitioner begging him to stop. *Id.* Petitioner's shoulder still hurts and he is no longer able to raise his right hand straight up. *Id.*

In Ground Four, Petitioner asserts violations of the Fifth and Eighth Amendments and the Americans with Disabilities Act ("ADA") based on deliberate indifference, wanton cruelty, and torture. *Id.* at 7. Petitioner describes himself in Ground Four as a mental health patient, explaining that he has participated in therapy and received state mental health services. *Id.* Petitioner states he was diagnosed with borderline schizophrenic paranoia as a result of repeated interactions with cruel law enforcement personnel, including the instances when he was the sole inmate sprayed in the eyes. *Id.* Petitioner also anticipates remaining traumatized from his experience being tortured while he was naked. *Id.* Petitioner asserts that police are aware of certain circumstances surrounding Petitioner's family and are acting in retaliation by bringing bad-faith criminal charges against him, using false affidavits, coercion, and compulsion. *Id.*

In Ground Five, Petitioner alleges intentional infliction of emotional distress and invasion of privacy, in violation of the Fourth and Fifth Amendments and other, unidentified federal laws. *Id.* at 7. As supporting facts for Ground Five, Petitioner asserts that Deputy Maren Johnson wears glasses that contain cameras and escorts Petitioner to his showers. *Id.* Petitioner further asserts that he has been the victim of retaliation, intimidation, and mental cruelty, causing substantial emotional distress. *Id.*

Specifically, Petitioner alleges that he was subjected to a baseless 96-hour lockdown and after he reported the mistreatment, his food, papers, and ink pens were forcibly removed from him

and he was "unable to report [his] situation for weeks." *Id.* Petitioner further alleges that false affidavits have been sworn about his arrest, perjury has been committed, and video footage of his arrest has not been released because it would show misconduct. *Id.* As relief in this case, Petitioner seeks his immediate release, federal sentencing of individuals who have intimidated him, and an order protecting him from "pretrial punishments in [b]oth cases." *Id.* at 7.

**Analysis**

The Court first notes that 28 U.S.C. § 2241 "is the proper avenue by which to challenge pretrial detention." *See Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007). However, as explained in the M&O, a plausible claim for relief under § 2241 must assert that the petitioner is in custody in violation of a federal law, federal treaty, or the federal Constitution. (Doc. 5, p. 5.) In other words, the allegation must be that the custody itself violates a federal law, treaty, or Constitutional provision.

Even when they are liberally construed, the arguments in the amended petition do not make this type of assertion. Rather, Petitioner's asserted grounds for relief argue that the conditions under which Petitioner is being held in custody violate federal laws and/or the federal Constitution. Put another way, Petitioner does not asserts that his custody itself violates a federal law, treaty, or the Constitution; he argues that his constitutional rights have been violated while he has been in custody. This is an important distinction. An example of an argument that a pretrial detainee's custody is unconstitutional and warrants relief under 28 U.S.C. § 2241 may be found in *Walck*.

The state of Oklahoma charged Darrah Walck with first-degree manslaughter after a traffic accident that caused the death of a passenger in the vehicle she was driving. 472 F.3d at 1230. The State identified another passenger in Ms. Walck's vehicle, Misty Moore, as an important witness. Ms. Moore testified at the preliminary probable cause hearing and the State planned to call her to

6

testify at trial. *Id.* at 1230-31. When the trial date arrived, however, the prosecutor learned during jury selection that Ms. Moore might be unable to appear at trial due to a medical emergency related to her advanced pregnancy. *Id.* at 1231.

Despite this knowledge, a jury was selected and sworn, opening statements were given, and the State presented the testimony of two other witnesses. *Id.* The State then moved for a mistrial because Ms. Moore was in the hospital undergoing a cesarean section and would not be available to testify for at least 3 days. *Id.* Ms. Walck objected, but the trial court declared a mistrial. *Id.* Ms. Walck then moved for dismissal of the charges with prejudice, arguing that trying her again would violate the Double Jeopardy Clause of the Fifth Amendment. *Id.* The trial court denied the motion, set a new trial date, and ordered Ms. Walck to appear for trial on that date. *Id.* at 1231-32.

After Ms. Walck's attempts at relief in the Oklahoma Court of Criminal Appeals were unsuccessful, she filed an emergency petition for writ of habeas corpus in the United States District Court for the Western District of Oklahoma, again arguing a Double Jeopardy violation. *Id.* at 1232. The federal district court ultimately "granted the petition and ordered the pending state criminal charges against Ms. Walck dismissed with prejudice on double jeopardy grounds." *Id.* (citation omitted). The State of Oklahoma appealed to the Tenth Circuit, which affirmed, finding in part that it was appropriate to grant relief under 28 U.S.C. § 2241. *Id.* at 1232, 1234, 1241.

Although the specifics of the Tenth Circuit's reasoning need not be related here, where the case is used as an example, it is important to understand that Ms. Walck's argument was that being held in custody for a second trial violated the Constitution. The custody itself, so to speak, was a violation because trying her a second time would be unconstitutional. In contrast, Petitioner's arguments in the amended petition now before this Court are that he endured unconstitutional treatment while he has been in custody.

The Tenth Circuit has explained that "counts relate[d] to the conditions of [the petitioner's] confinement, rather than the fact or length of his confinement, . . . are improperly brought pursuant to 28 U.S.C. § 2241 and should be brought under 42 U.S.C. § 1983." *See Abdulhaseeb v. Ward*, 173 F. Appx. 658, 660 (10th Cir. 2006) (unpublished) Therefore, to the extent that the grounds for relief asserted in the amended petition are based on allegations that Petitioner's civil rights were violated during his pretrial detention, they must be dismissed.[2] Practically speaking, this requires the dismissal of the entire amended petition.

Because the amended petition also briefly alleges unconstitutional acts in the ongoing state criminal proceedings against Petitioner, the Court will briefly address the well-established doctrine that federal courts generally should not exercise their power to discharge a person being detained by a state for trial on a state crime, even where the person alleges that the detention is unconstitutional. In 1886, the United States Supreme Court described some very limited circumstances in which such intervention might be proper, such as when the person is in custody for an allegedly criminal act that was required by federal law or federal court order, when the person is a citizen of a foreign country and is in state custody for an allegedly criminal act done under the authority of that foreign country, when the matter is urgent and involves the United States' relations with foreign nations, or when there is some reason why the state court may not resolve the constitutional question in the first instance. *See Ex parte Royall*, 117 U.S. 241, 251-52 (1886). Otherwise, federal courts must abstain from interfering with the process of state courts. *Id.* at 252 (stating that federal courts' non-interference with state courts "is a principle of right and law, and therefore of necessity").

Even liberally construing the amended petition, it does not allege that Petitioner is a citizen

---

[2] The Court notes that Petitioner currently is pursuing a civil rights action in this Court. *See Gatlin v. Bergerstock*, Case No. 26-cv-3143-JWL.

of a foreign country[3] and that he is in state custody for an allegedly criminal act done under the authority of that foreign country. It does not allege facts that support any other basis for avoiding the abstention required by *Ex parte Royall*. Therefore, even if Petitioner had articulated a plausible ground for habeas relief in his amended petition, the record now before the Court reflects that *Ex parte Royall* would require this Court to abstain from considering Petitioner's request for habeas relief from his ongoing criminal prosecution in state court.

Finally, the Court notes that in addition to Petitioner seeking relief in this case in the form of his immediate release and an order barring future unconstitutional treatment, he seeks the criminal prosecution of those who have harassed, intimidated or maliciously prosecuted him. (Doc. 11, p. 7.) This Court cannot order the criminal prosecution of an individual; "such an order would improperly intrude upon the separation of powers." *See Presley v. Presley*, 102 Fed. Appx. 636, 636 (10th Cir. 2004) (unpublished).

In summary, even liberally construing the amended petition in light of Petitioner's pro se status, none of the five grounds for relief asserted therein state a claim on which habeas relief could be granted under 28 U.S.C. § 2241. Rather, all five grounds assert claims that must be brought in a civil action under 42 U.S.C. § 1983. Petitioner will be given time to show cause, in writing, why this case should not be dismissed under Habeas Rule 4 because it plainly appears from the amended petition that Petitioner is not entitled to federal habeas relief under 28 U.S.C. § 2241. If Petitioner

---

[3] In the amended petition, Petitioner briefly refers to a provision of the FSIA, specifically the statute that provides:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

(*See* Doc. 11, p. 2); 28 U.S.C. § 1604. Even assuming solely for the sake of argument that Petitioner falls within the definition of "a foreign state" under the FSIA, the FSIA does not render him immune from criminal prosecution. *See Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 272 (2023) ("We now hold that the FSIA does not grant immunity to foreign states or their instrumentalities in criminal proceedings.").

fails to timely respond to this order, this case will be dismissed without further prior notice to him.

**IT IS THEREFORE ORDERED** that Petitioner is granted to and including July 24, 2026, to show cause, in a single written response to this order, why this matter should not be dismissed for the reasons set forth in this order.

**IT IS SO ORDERED.**

DATED:   This 18th day of June, 2026, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge